## Application of SMITH.
### Patent Appeal No. 5575.

United States Court of Customs
and Patent Appeals.
April 12, 1949.

Clyde A. Norton and M. Theodore Simmons, both of New York City (Eugene C. Taylor, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

JACKSON, Judge.

The Primary Examiner of the United States Patent Office rejected as unpatentable over the prior art, article claims 1 to 4, inclusive, 6, and 7, and method claim 5 of an application for a patent for "Electrical Heating Units," serial No. 435,567, filed March 20, 1942. The Board of Appeals affirmed the decision of the examiner. From that decision, this appeal was taken.

The prior art relied on is as follows:

Ashbaugh, 428,443, May 20, 1890.
Steinhardt, 1,442,910, January 23, 1923.
Lightfoot, 1,617,489, February 15, 1927.
Beck et al., 2,060,968, November 17, 1936.
Adams, 2,107,924, February 8, 1938.

Appellant's motion to dismiss the appeal as to claim 1 will be granted.

The Primary Examiner, in addition to the rejection of the claims as unpatentable over the prior art, also rejected them as unpatentable over an issue decided by the board in appeal No. 38,411, which involved the abandonment of application No. 182,711 of the same appellant. The Board of Appeals did not sustain that rejection.

Claims 2 and 5 are illustrative of the involved subject matter and read as follows:

"2. An electric heating unit having a metal body cast directly about a core comprising a solid rod of ceramic dielectric disposed in contiguous layers forming substantially a vertical helix, the rod having embedded therein a spirally wound resistance wire filament with attached terminals, which latter project outwardly from said helix, the walls of the body outside the core being thin, and a well in the body extending from the top thereof downwardly and near to the core."

"5. The method of producing a core for an electric heating element which consists in spirally winding the resistance wire with separated loops, surrounding and filling the spiral with plastic ceramic dielectric, arranging the coated spiral in substantially a helix with contiguous layers and with the ends projecting outwardly from the helix, and firing the core to fix its shape and to drive off gases therefrom."

The application relates to electrical heating units used in coffee percolators and similar devices. The method involved, as may be observed from a reading of claim 5, has relation to the production of what is called the "core" of the device. The quoted claims are readily understandable and require no further description.

The patent to Ashbaugh relates to an electrical heater. It discloses resistance wires through the middle of fire-clay block or the like, which is placed about the wires.

The block is then dried, baked, and encased in a metallic jacket.

The Steinhardt patent relates to electrically heated vessels made of ceramic material and a method for making them. It discloses a cup-like structure at the bottom of which the heating means is situated. There is disclosed in the structure a helical groove in which is placed the conducting wire. Then the wire is covered with ceramic material which "should not be too wet" and the article is baked.

The Lightfoot patent provides for electrically heated devices and a method of their manufacture. There is disclosed in the patent a heating element comprising a helical resistor enclosed in a tubular metal jacket from which it is thoroughly insulated. The patent discloses a method of making the heating device which consists in winding a heating element in helical form around a metal pipe. A metallic shield is then cast onto the pipe section to provide a covering. The type of heating element used is defined by reference to an earlier Lightfoot patent, No. 1,359,400, dated November 16, 1920. The drawings in that patent disclose a helical resistor insulated from a metallic jacket. The insulation, which is in granular form, is poured into the jacket and compacted after the resistor has been inserted, thus insulating the resistor from the jacket and also each turn of the resistor wire from the other turns. The resistor may be bent into various forms, one of the forms shown in the drawings being helical.

The Beck et al. patent relates to an electrical heating device and a method for making it. It is stated that one of the objects of the patent is a method for producing a heating device by applying an insulating coating to a resistor wire, then hardening the coating and embodying the resistor wire thus coated in a cast metal. There is disclosed a coating over the resistor wire of ceramic material, which may be applied in liquid or semi-liquid form. The insulation material is hardened and then the resistor, coated with the hardened ceramic material, is cast within the metal material. It is said that in making the unit of the patent, the wire will first be formed into its desired shape, then given its ceramic insulation, and after the insulation has hardened, a metal casting is made around the insulated wire by conventional methods. The drawings of the patent disclose the insulated wire in helical form and laid in a groove.

The patent to Adams has reference to coffee-making utensils, particularly those of the "drip" type. In that type of coffee making, water at a substantially boiling temperature passes through the ground coffee. The device of the patentee discloses a helical resistant element surrounded by insulating material. The element with its surrounding material is bent into circular form and imbedded in the heating chamber, which is of cast metal.

The Primary Examiner rejected the article claims as unpatentable over the patent to Beck et al. in view of the Adams patent. The latter patent was relied upon as anticipating the "well" of the involved claims with the "thin wall" limitation heated by a "cast-in" resistor-heating unit. The examiner stated that the Beck et al. patent discloses "hardened ceramic" enclosed in a metallic casting. He held that it would not be inventive to use the ceramic insulated coil of the Beck et al. patent in place of the equivalent ring shaped heating unit of the Adams structure. Those claims were further rejected as unpatentable over the Lightfoot patent in view of the patent to Beck et al. With respect to this rejection, the examiner stated that the patent of Lightfoot, while disclosing much the same features as the Adams structure, had a clearer showing of a helix.

Method claim 5 was considered by the examiner to be anticipated by each of the Beck et al., Asbaugh, and Steinhardt patents.

In our opinion there is a clear disclosure of all of the elements of the rejected claims in the prior art. The insulation coating of the Beck et al. device is not necessarily applied in liquid form, as is stated in the brief of appellant. The coating may be, as has hereinbefore been set out, in a semiliquid form. That form, in our opinion, is the same as the form of ceramic used by appellant.

The electric conductor of the Beck et al. device is specifically disclosed as having its surface bonded with a solid coating of ceramic substance, and, therefore, it seems to us that there is no patentable novelty in the solid core construction claimed by appellant.

It is not new, as shown in the structure of the Ashbaugh reference, to fill the spaces between the spirally wound resistor wire with insulation. In that patent it is shown that fire-clay is pressed over the wire. In the structure of the Steinhardt patent, ceramic material fills out the space in which the resistor wire is wound in helical fashion. Therefore, we can not agree with the contention of appellant with respect to the lack of disclosure of filling with ceramic material the spaces between the wound wire.

Contrary to the statement of counsel for appellant that the Beck et al. patent does not disclose plastic material, it is stated in the specification of that patent that the insulation may be of "ceramic cement," which hardens and certainly may be moulded to any desired form.

Counsel for appellant lays great stress upon the assertion that the structure of the Beck et al. device does not disclose contiguous layers. That may be true enough, but we believe, as did the board, that it does not involve invention to wind the core of the Beck et al. device to form a vertical helix if it were so desired, and whether or not the loops of the helical structure are contiguous, to our way of thinking, is a matter of choice. Neither claim 6 nor 7 contains any limitation with respect to contiguous layers. Furthermore, while a dictionary definition of the word "contiguous" means "things that are in actual contact," nevertheless, it is also defined as meaning, "also, near; though not in contact, neighboring * * *." It would have been a simple matter, if appellant considered the contiguity of the rolls in his helical core to be of such a nature as to lend patentability to the claims, to have so stated.

It is clear to us that the structure disclosed in the Beck et al. patent does disclose a helix. In fact it is so stated in the specification.

With respect to method claim 5, the method shown in the patent of Beck et al. provides for the winding in spiral fashion of a resistance wire in separate loops. The wire so wound is surrounded with plastic ceramic. The spirals appear to be quite close to each other, and when the core has been made it is hardened. It is true that the heating element means of that patent appears to be in spiral rather than helical form, but we agree with the reasoning of the board that in view of the devices of the Steinhardt structure or the Lightfoot structure, such difference is of no patentable significance. The firing step in the method claim is disclosed in the method of the Steinhardt patent wherein the heating core is said to be a conductor surrounded by a protective layer of ceramic material, having its fusing temperature reduced by adding fluxing media thereto, and then baked at a reduced temperature.

We find no error in the decision appealed from. The motion to dismiss the appeal as to claim 1 is granted, and the decision of the Board of Appeals, as to the other claims, is affirmed.

Affirmed.